**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CALEB LANE ,**

    **Plaintiff,**

v.                                                                        Case No.  8:11-cv-2851-T-30TBM

**G.A.F. MATERIAL CORPORATION,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant G.A.F. Materials Corporation's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 69) and Plaintiff's Response to Defendant G.A.F. Materials Corp.'s Motion for Summary Judgment (Dkt. 83).  The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes the motion for summary judgment should be granted.

## BACKGROUND[1]

In his second amended complaint, Plaintiff Caleb Lane alleges two counts against Defendant G.A.F. Materials Corporation: (1) discriminatory termination under 42 U.S.C. § 1981 and (2) a hybrid § 301/fair representation claim.  Count II was also alleged against Defendant United Steelworkers Local 9-458 ("USW"), but the Court granted the joint motion

---

[1] These facts are taken in a light most favorable to Lane, the non-movant.

by Lane and USW for a stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii).[2]

GAF manufactures residential and commercial roofing products, including shingles. Lane, an African-American, was hired by GAF on February 1, 2008, where he worked as a general laborer and coater operator. During his employment with GAF, Lane worked under the terms of the collective bargaining agreement ("CBA") between GAF and USW. The CBA explicitly prohibits discrimination against any employee on the basis of race, as does GAF's Rules of Conduct.

In August of 2008, Lane submitted a bid for a coater operator position. The selection was based on seniority and Lane stated that nobody really likes the position, so there were not many applicants. Marcus Evans, another coater operator, trained Lane for approximately a week, which Lane claims is insufficient time to learn how to perform his job adequately. Lane admits that his position is very important to the production line because if the granules were not correct, the finished product would be substandard and GAF could not sell it.

As a coater operator, Lane's duties included making color changes to the granules blend and testing the granules blend quality. Lane learned to conduct two different types of tests to ensure the mix did not have any defects. The first method for completing a sample match blend test required the operator to physically pull a sample of the granules blend by using a "long handle sampler" and comparing it to samples previously taken. This was the

---

[2] The Court's order of January 11, 2013, contains the procedural history of the case. Dkt. 59.

standard operating procedure for GAF found in written company policy and officially included in a coater operator's duties. Alternatively, Lane claims he was instructed to use a visual test by "checking the product in the looper" without collecting a sample. There is no evidence that this second method, although apparently done by employees and permitted by supervisors, was formally authorized by GAF policy. A coater operator was required to conduct a sample match blend test each hour of his shift and enter the results into a computer program called WINSPC.

Prior to July 15, 2010, Lane had informed his supervisor, Norvel Coleman, that there was a problem with the sample bottles used in the former method for completing a sample blend test. Coleman instructed Lane to observe the overhead looper as a substitute for performing the sample match blend test because the samples were contaminated. Additionally, Coleman testified that Lane was still expected to log his sample match blend tests in the WINSPC.

On July 15, 2010, Lane worked as a coater operator from 3 p.m. to 9 p.m. Lane claims he conducted a test every hour by checking the looper and recorded those tests in WINSPC. After 8 p.m., the video surveillance shows Lane conducted a sample match blend test by pulling samples using the long handle sampler, rather than checking the blends in the overhead looper. When Shane Green took over Lane's duties at 9 p.m., Green conducted a sample match blend test by pulling samples rather than conducting a visual test. Green noticed the colors of the granules did not match and notified his supervisor. By the time the production line was shut down, 1,526 squares of substandard shingles were lost and GAF lost

approximately $53,410.00. It is estimated that this production loss began between 4 p.m. and 5 p.m. during Lane's shift.

Operations Manager Daniel DeJarnette investigated the incident leading to this production failure. DeJarnette determined several individuals contributed to this incident, including Norvel Coleman, Damian McDonald, Walter Butler, Lenton Douglas, and Lane. All these men, except Lane, admitted their part in the production failure and received written warnings. Notably, all these fellow crew members of Lane are also African-American.

When DeJarnette met with Lane, DeJarnette claims Lane refused to accept any responsibility for the production failure and that Lane told him he followed standard operating procedure by conducting the sample match blend test each hour of his shift. DeJarnette found this explanation suspicious because Green discovered the problem as soon as he arrived on his shift. When DeJarnette reviewed the video surveillance, it showed that Lane had not conducted the tests every hour according to the written policy of using the long handle sampler, but only conducted that type of test sometime after 8:10 p.m. Based on DeJarnette's investigation, he found Lane to be the only member of his crew who did not admit wrongdoing, and, more significantly, the only crew member to have falsified company documents by inputting into WINSPC that he conducted sample blend tests. Falsification of company records is a violation of Company policy, and DeJarnette recommended Lane be terminated. On July 21, 2010, GAF terminated Lane for falsification of company documents.

In the second amended complaint, Lane points to two white coater operators, Rick Bishop and Shane Green, who were not terminated after causing defective roofing shingles. Lane testified he is unaware of any other GAF employee who was accused of falsifying company records. GAF submitted an affidavit of Becky Ewing, a human resources assistant at GAF, that stated a white female employee was terminated in 2009 for falsifying company records. She was the only other employee accused of falsifying records during Lane's employment at GAF, and both were terminated as a result.

GAF now moves for summary judgment on both counts, arguing that Lane has failed to present any evidence showing he was terminated based on his race. Lane responds that GAF's proffered reason, falsification of records, is merely pretext for unlawful discrimination because Lane could not reasonably be expected to know he was falsifying records based on his inadequate training.

### **SUMMARY JUDGMENT STANDARD OF REVIEW**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action

will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

**I.      Count I: Discriminatory Termination  - 42 U.S.C. § 1981**

The elements of a claim of racial discrimination under 42 U.S.C. § 1981 are the same as a Title VII disparate treatment claim in the employment context.  *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).  In the absence of direct evidence of racial discrimination, a district court analyzes the circumstantial evidence by using the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

Under the burden-shifting framework, a plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable jury to determine that he has satisfied the elements of his *prima facie* case.  *Id.*    A plaintiff may establish a *prima facie* case by showing that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his protected class more favorably than he was treated; and (4) he was qualified to do the job.  *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).[3]

---

[3]Lane argues that prong three should be whether his former position was filled by a non-minority, or, in the alternative, whether a similarly situated person who is not in his protected category was treated more favorably.  For support of this position, Lane cites *Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir. 1982).  The overwhelming majority of Eleventh Circuit precedent indicates this prong is whether similarly situated employees outside the plaintiff's protected class were treated more favorably.  *See, e.g., Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010); *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001); *Rice-Lamar*, 232 F.3d at 842; *Selby v. Tyco Healthcare Grp., L.P.*, 301 Fed. App'x 908, 911
(continued...)

A rebuttable presumption arises once a plaintiff presents a *prima facie* case. *Alvarez*, 610 F.3d at 1264. The employer may rebut that presumption by offering a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the plaintiff to prove the proffered reason is a mere pretext for unlawful discrimination. *Id.* The plaintiff may satisfy his burden by offering evidence that a defendant more likely than not acted with a discriminatory motive, or by showing that its proffered reasons are not credible, "unless the record shows that the real motive was a non-proffered reason that is non-discriminatory." *Id.* at 1265.[4] "The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001). Despite the burden-shifting framework, the plaintiff maintains the ultimate burden to show the employer intentionally discriminated against him. *Alvarez*, 610 F.3d at 1265.

---

[3](...continued)
(11th Cir. 2008); *Hall v. Dekalb Cnty. Gov't*, 2013 WL 104810, at *5 (11th Cir. Jan. 9, 2013); *but see Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs.*, 47 F.3d 1068, 1073 (11th Cir. 1995); *Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982). Moreover, "[t]he methods of presenting a prima facie case are flexible and depend on the particular situation," *Alvarez*, 610 F.3d at 1264, and it is appropriate to compare similarly situated employees given this case concerns termination, not a job promotion or new position.

[4] Although GAF argues the primary reason is falsification of records, the Court notes that an alternative non-discriminatory reason for GAF's actions could be Lane's refusal to admit responsibility for the accident.

GAF argues that Lane fails to establish even a *prima facie* case. There is no dispute that Lane meets the first, second, and fourth elements of his *prima facie* case. Lane is African American, he was terminated, and he was qualified to be a coater operator. Lane and GAF disagree whether employees who did not belong to the protected class were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Id.* (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).[5]

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera*, 244 F.3d at 1259 (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1311 (11th Cir. 1998), *opinion modified by* 151 F.3d 1321 (11th Cir. 1998)). "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia*, 171 F.3d at 1368.

Here, Lane points to Rick Bishop as a white employee who was similarly situated to himself in that Bishop caused damage to shingle production approximately twenty to thirty days before July 15, 2010, yet Bishop was not terminated for failing to conduct proper sample match blend tests. GAF responds that Bishop is an inappropriate comparator because there is no evidence that Bishop falsified company records, which is GAF's primary reason

---

[5] As discussed above, Lane first argues that the appropriate comparator is Jason Rumbler, a white male who assumed Lane's position as coater operator on the "B" shift after Lane's termination.

for terminating Lane. The Court agrees. An appropriate comparator would be an employee outside of Lane's protected class who was also accused of falsifying company records. GAF provided one: Melissa Bowe, a white female who was terminated for falsifying company records in June 2009. Lane does not dispute or offer contradictory evidence that Bowe was terminated for the same misconduct and that she is outside Lane's protected class, nor does Lane point to a white employee who was *not* terminated for falsifying company records.[6] As such, Lane fails to present a *prima facie* case of discrimination.

However, assuming arguendo that Lane can establish a *prima facie* case, the record lacks any evidence that would give rise to an inference that GAF terminated Lane based on his race. GAF sets forth a legitimate, non-discriminatory reason for Lane's termination, thereby shifting the burden back to Lane to prove the proffered reason is mere pretext for unlawful discrimination. Lane does not carry this burden because he cannot show that GAF's reason is not credible nor does he present evidence that GAF more likely than not terminated him because of a discriminatory motive.

"Caleb Lane is terminated effective July 21, 2010 for falsification of Company documents." *See* Dkt. 82-1, Ex. 13. That statement was GAF's primary reason noted on Lane's Disciplinary Action Form and it is the same reason GAF has proffered throughout this lawsuit. There is no dispute in the record that GAF's Rules of Conduct clearly make

---

[6]In the second amended complaint, Lane alleges that Rick Bishop and Shane Green are two white comparators. However, in his response to the motion for summary judgment, Lane admits that he does not have sworn testimony from Green to support his allegation that Green was a coater operator who experienced a similar incident yet was not terminated.

falsifying company records a terminable offense. *See* Dkt. 82-1, Ex. 4. There is no dispute in the record that Lane received a copy of the Rules of Conduct. *See* Dkt. 82, Lane's Depo., 129:9-20. There is no dispute that GAF written policy requires using the long handle sampler to conduct the sample blend match test, and Lane acknowledged that method was the standard operating procedure. Dkt. 82, Lane's Depo. 147:7-25; Dkt. 82-1, Ex. 11. Therefore, it is a legitimate reason to believe Lane falsified company records by inputting in WINSPC that he conducted the sample blend match tests when he did not actually follow the required method.

Furthermore, the only other employee, a white female, accused of falsifying company records during Lane's employment was also terminated. *See* Dkt. 76, Ewing Aff., ¶ 3. This fact supports GAF's decision to terminate Lane as legitimate based on company practice. Accordingly, GAF has proffered a legitimate, non-discriminatory reason for his termination. *See Simpson v. Fla. Dep't of Corr.*, 134 Fed. App'x 303, 305 (11th Cir. 2005) (affirming district court grant of summary judgment because plaintiff failed to show employer's reason for termination, submission of false time sheets and failure to cooperate with investigation, were pretext).

After GAF proffered a legitimate, non-discriminatory reason, Lane's burden is to show that GAF's proffered reason, falsification of company records, is not only ill-founded but also that unlawful discrimination was the true reason. *Alvarez*, 610 F.3d at 1266 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000). The Eleventh Circuit has aptly described the focal point of the issue of pretext:

Case 8:11-cv-02851-JSM-TBM Document 84 Filed 03/25/13 Page 12 of 17 PageID 1960

>The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head. The question is not whether it really was Alvarez's fault that assignments were not completed on time, or whether she did delegate excessively, or whether she was aggressive and rude to her colleagues and superiors, or whether she actually lost an important document or truly did fall asleep at her desk. The question is whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about Alvarez as cover for discriminating against her because of her Cuban origin.

*Alvarez*, 610 F.3d at 1266 (internal citations omitted).

"[A]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Hudson v. Blue Cross Blue Shield of Ala.*, 431 Fed. App'x 868, 869 (11th Cir. 2011) (quoting *Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999)). This is true if an employer set unreasonable or nearly impossible standards that made it difficult for employees to comply with work rules. *Alvarez*, 610 F.3d at 1267 (finding no pretext on behalf of employer's reason because "[employer] was free to set unreasonable or even impossible standards, as long as [it] did not apply them in a discriminatory manner."). However, "[a]n asserted 'work rule' violation *may* be pretextual when the plaintiff proffers evidence '(1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated.'" *Damon*, 196 F.3d at 1363 (emphasis added).

Here, Lane tries to show the falsification reason is pretext by showing that he was inadequately trained and was misinformed about whether he was allowed to conduct an

alternative visual inspection instead of the required sample blend match test. He also points to the fact that the computer system does not directly ask him what type of test he conducted. Lane's logic is that he was unaware of company policy requiring only sample blend tests and ignorant of the fact that he was incorrectly entering data.[7] He also strongly relies upon his testimony that his supervisor instructed him to conduct the visual inspection and that he would be considered insubordinate if he did not comply.

But, ignorance does not mean he did not violate the work rule, nor does GAF's sub-par training of Lane undo the fact that he inaccurately entered data in violation of GAF's policy. If true, the Court can sympathize with Lane's predicament: he lacked the mental intent to falsify records and his termination appears unfair. However, the Court is not allowed to sit as a "super-personnel department" to second-guess GAF's wisdom or business procedures, *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000), and fairness is not the proper inquiry, *Rojas v. Fla.*, 610 F.3d 1339, 1342 (11th Cir. 2002) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."). As the Eleventh Circuit has repeatedly stated, "[an] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *See, e.g., Dulaney v. Miami-*

---

[7]Lane argues Seventh Circuit precedent should persuade the Court to analyze the legitimate reason with the additional requirement that the employer have a reasonable expectation that the employee could comply with work regulations. Not only is the Court not bound by other Circuits' precedent, this standard seems opposed to the Eleventh Circuit's precedent that does not require an employer's reasons to be fair, reasonable, or prudent.

*Dade Cnty.*, 481 Fed. App'x 486, 490 (11th Cir. 2012); *Santillana v. Fla. St. Ct. Sys.*, 450 Fed. App'x 840, 844 (11th Cir. 2012); *Greer v. Birmingham Beverage Co., Inc.*, 291 Fed. App'x 943, 946 (11th Cir. 2008). Ultimately, Lane cannot point to anything in the record that suggests GAF did not honestly believe he falsified company records or that discrimination was the true motive.[8] *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance.").

Accordingly, GAF is entitled as a matter of law to summary judgment on the discriminatory termination claim.

## II. Count II: Hybrid § 301/Breach of Duty of Fair Representation

GAF moves for summary judgment on Count II for breach of the duty of fair representation on the grounds that GAF cannot be substituted in the place of USW because it owes no duty of fair representation to Lane and Count II's allegations relate solely to USW's behavior, not GAF. Lane fails to respond to GAF's motion for summary judgment on Count II.

"[A] district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion . . . [and] ensure that the motion itself is supported by evidentiary materials." *United States v. One*

---

[8]Lane argues that non-binding precedent from labor arbitration cases should persuade this Court to add the principle of "just cause" into an employer's duty under Section 1981. Lane admits that he can find no case law to support this argument. This Court must follow binding Eleventh Circuit precedent. As such, the Court declines to extend an employer's duty to include "just cause."

*Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A failure to respond to the motion for summary judgment merely deems the movant's assertions of fact "undisputed for purposes of the motion," but the record must show the movant is entitled to summary judgment. Fed. R. Civ. P. 56(e)(2); *see Branch Banking & Trust Co. v. Howard*, 2013 WL 951652, at *3 (S.D. Ala. Mar. 8, 2013).

If Count II was simply a breach of the duty of fair representation, GAF's arguments would be availing. However, the Court previously found in its order denying GAF's motion to dismiss that Lane adequately pled a hybrid § 301/fair representation claim against both GAF and USW. See Dkt. 26. A hybrid 301 claim consists of two causes of action: the suit against the employer rests on § 301 and alleges a breach of the CBA while the suit against the union is one for breach of the union's duty of fair representation.

Moreover, for hybrid § 301 claims, "[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello v. Int'l Bhd. of Teamsters*, 463 U.S. 151, 165 (1982). "To prevail, a plaintiff must demonstrate both that the CBA was breached and that the union breached its duty of fair representation." *Aldred v. Avis Rent-A-Car*, 247 Fed. App'x 167, 171 (11th Cir. 2007).

In Lane's second amended complaint, he alleges that GAF violated the CBA because it discriminated against him on account of his race. The CBA explicitly prohibits "discrimination of any sort against any qualified employee on the basis of race." Lane also

alleges that USW, motivated by discriminatory animus, permitted the violation to go unrepaired and thereby breached its duty of fair representation towards Lane.

To succeed on his hybrid claim, Lane must be successful on *both* causes of action. As discussed in Count I, GAF is entitled to summary judgment because Lane has failed to present evidence that GAF terminated him based on racial discrimination. Therefore, he cannot establish that GAF violated the CBA's provision against discrimination based on race, the first necessary cause of action to succeed on the hybrid claim.

Furthermore, although GAF does not point to specific facts, the Court notes that Lane's deposition testimony firmly establishes that USW did not permit the violation to go unrepaired based on his race. *See* Dkt. 57-1. When asked whether USW discriminated against him because of his race, Lane responded, "Not so much even that. I think the union has clicks [sic]. . . . I just believe that I was discriminated because I wasn't in the certain click [sic]." *Id.* Although USW is no longer a party, Lane is still entitled to bring this claim only against GAF. Nevertheless, Lane maintains the burden of proving the claim against USW. There are no facts in the record which support Lane's claim that USW breached its duty of fair representation based on discriminatory animus.

Accordingly, GAF is entitled to summary judgment on the hybrid 301/duty of fair representation claim.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant G.A.F. Materials Corporation's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 69) is GRANTED.

2. The Clerk is directed to enter final judgment in favor of Defendant and against Plaintiff.

3. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on March 25, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2011\11-cv-2851.mtsumjudg.frm